**PHILIP L. GUARINO, ESQ.**
**GUARINO & CO. LAW FIRM, LLC**
**Attorney I.D. # 027561982**
300 Main Street, Suite 552
Madison, NJ 07940
973/615-1791
Fax: 973/528-0635
e-mail: guarinolaw@gmail.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PHILIP GUARINO,<br>individually and as representative of<br>a class,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN UNION COMPANY,<br><br>Defendant. | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | Civil Action No. 20-CV-5793<br><br><br>**AMENDED COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Philip Guarino ("Guarino"), individually and on behalf of the class

identified *infra*, by way of complaint against Western Union Company ("WU"), alleges:

### PARTIES

1. Guarino is an attorney-at-law of the State of New Jersey, and the sole principal of

Guarino & Co. Law Firm, LLC whose principal office is located in Madison, New Jersey.

2. WU is engaged in the business of effectuating money orders worldwide. It

generally does business within the entire State of New Jersey. On its website, WU represents

that it "moved more than $300 billion in principal around the world in 2018"; it "completed

34 transactions each second in 2018"; it has over "5,000+ agents around the globe"; it is in

1

over "200+ countries and territories;" and it has "the capability to send money to billions of accounts worldwide."

3. References throughout this amended complaint to WU acting wrongfully include WU's overseas subsidiaries and/or agents, who operate WU agencies abroad and for whose actions WU is liable as alleged at Counts One and Two.

## BACKGROUND

4. Guarino has often sent money orders to New Jersey in the United States and to Canada from France. He has sent scores of money orders to New Jersey in the United States and to Canada, beginning as early as 2008, and even prior thereto, and continuing until March 9, 2020. As but a small sampling, Guarino sent WU money orders to New Jersey in the United States on the following dates and in the following amounts (disclosed WU transfer fee included, as well as hidden, non-disclosed, onerous and unconscionable margin that was applied by WU to foreign exchange rate): September 17, 2008 (329€); November 12, 2008 (329€); March 3, 2009 (329€); March 12, 2009 (329€); March 19, 2009 (249.56€); April 17, 2009 (329€); July 8, 2009 (329€); October 9, 2009 (329€); November 21, 2009 (329€); December 24, 2009 (344€); January 7, 2010 (329€); February 27, 2010 (638€); November 27, 2010 (150€); December 31, 2010 (255.40€); January 22, 2011 (252.30€); February 11, 2011 (255.08€); July 9, 2011 (395.65€); July 23, 2011 (425€); November 24, 2011 (258.15€); March 12, 2016 (722.62€); December 6, 2016 (1,523.29€) October 4, 2017 (151.47€); November 4, 2017 (391.07); February 1, 2018 (597.72€); October 29, 2018 (501.41€); March 29, 2019 (526.09€).

5. The money order sent by Guarino to Canada from France on March 9, 2020 was in the amount of 1,582.12€ plus 64€ of disclosed fees, for a total of 1,646.12€. *See* Western

Union Receipt, annexed as **Exhibit A**.  The exchange rate used by WU to convert Euros to Canadian Dollars was 1 Eur = 1.3557741 CAD.  The market foreign exchange rate on that day for conversion of a Euro to a Canadian Dollar, however, was 1 Eur = 1.56 CAD.  *See* Historical Foreign Exchange Rates, annexed as **Exhibit B**.  The money order was paid for with Guarino's debit card linked to a New Jersey bank, from which New Jersey bank account money was debited.

6.  Prior to accepting the money orders, WU did not advise Guarino and does not advise consumers who appear at foreign WU locations (including post offices and merchants authorized to act as WU agents) to send money that in addition to the disclosed transfer fee charged it will **also** drastically manipulate the foreign exchange rate in its favor by adding an onerous and unconscionable "margin" so as to reap additional, non-disclosed fees.  Hence, WU stripped Guarino and other consumers of any ability to make an informed choice as to whether to utilize WU services.  Nor did WU advise Guarino and it does not advise consumers who appear at foreign WU locations that, depending upon the amount of the money transfer, not all WU agencies in the United States or Canada will be able to immediately pay the transferee the amount of cash transferred.  Indeed, the money transferred by Guarino on March 9, 2020 was only able to be paid to the transferee a full three days later on March 12, 2010, because the WU agency did not have sufficient cash to pay the transferee. WU, however, represents that money transfers are "available in minutes" to the transferee.

7.  On the back of the WU form provided to WU customers such as Guarino who utilized foreign WU agencies, general conditions are set forth.  Although these general conditions state that WU will increase the interbank exchange rate (nowhere defined) by a certain margin, the amount of the margin is not disclosed and is not otherwise readily

discernable by the consumer; moreover, WU does not advise or disclose to consumers appearing at foreign WU agencies that *any* margin at all is applied.  WU never discloses in its general conditions or otherwise that an onerous, unconscionable margin will be applied. Although WU is careful to disclose the transfer fee charged on the front of the WU form, as well as the foreign exchange rate actually utilized (which includes the undisclosed margin), WU is very careful not to disclose on the front of the WU form the amount of margin added to the foreign exchange rate, or any other information necessary to enable the consumer to understand how WU has utilized a foreign exchange rate that is far less favorable to the consumer than *either* the market or interbank exchange rates applicable at the time of the transaction, or even the rate advertised by WU on its website.  WU deceives the consumer.

8.  The general conditions on the back of the WU form are, in any event, ineffectual and the WU form is a contract of adhesion whose terms cannot be changed or altered by a consumer.  Although WU boasts that it is a global organization, the general conditions provided to consumers on the back of the WU form (and everything on the front of the form) are in a foreign language!  WU does not even provide the general conditions in English, or in any other language other than that of the country in which the foreign WU agency is located. Moreover, the general conditions are in ridiculously small fine print on the back of a form which is not even detached from other forms and given to the consumer independently of the other forms until after the form is signed and the transaction is completed.  Although several versions of this form have been utilized by WU over the years, no form contains any acknowledgement on the front of the WU form that the consumer has read and understood the general conditions other than in a foreign language.  The failure of WU to provide a copy of the signed form contract to consumers until after the transaction is completed violates the

4

New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.22. No WU form ever reveals in any language the amount of margin added by WU to the foreign exchange rate.

9. In its general conditions on the back of the form in fine print and in a foreign language, WU states that the exchange rate utilized is the WU exchange rate that prevails at the time of the transaction. This is false and misleading, because prevailing foreign exchange rates posted by WU on its online web sites as being used by WU are systematically more favorable to the consumer than those actually utilized by WU at its foreign agencies. WU never discloses to consumers utilizing WU foreign agencies that they could obtain better foreign exchange rates online.

10. At its online site (www.westernunion.com), WU purports to allow consumers to calculate what it will cost to send money through WU. A consumer who utilizes the site will be provided with a "transfer fee" figure for the purported cost of the transaction. The figure provided by WU is false and misleading, because it does not disclose to the consumer that the consumer also is being charged an exchange rate margin added by WU in addition to the disclosed transfer fee, and does not disclose the amount of that margin. The site thus does not permit the consumer to understand the onerous, unconscionable exchange rate that will be utilized by WU. The exchange rate on the WU online site is false because it is more favorable to the consumer than that actually charged the consumer at WU foreign agencies.

11. The WU exchange rates represented by WU on its site are false, and the difference in yield between the rate represented (generally the market rate) and the rate actually utilized by WU at foreign agencies is significant.

12. For example, for the amount transferred by Guarino on March 9, 2020 (1,582.12€), at the exchange rate represented by WU online of 1 EUR = $1.56 CAD which

was the approximate market rate that day, there should have been a yield to the recipient of $2,468.10 CAD. Yet the yield was but $2,145 CAD—a difference of $323.10 CAD. Hence, because of the undisclosed and hidden margin added by WU to the interbank exchange rate (nowhere defined), there was a difference of $323.10 CAD, or approximately 208€, which translates into approximately 13% of the total transaction amount. WU falsely creates the impression that it is sending money for a reasonable fee, because WU represents that there is but a small "transfer fee" but (i) fails to disclose that it is applying an onerous and unconscionable margin to the foreign exchange rate, and (ii) wholly independently falsely represents online the use by it of an excellent foreign exchange rate that generally is the market rate.

13. Although in WU's general conditions and in an online footnote WU states that it "makes money" on the foreign exchange rate, WU does not disclose to consumers the amount of the margin that it adds to the foreign exchange rate, and does not disclose that the margin is onerous and unconscionable. Although in an online footnote (only) WU also states that the foreign exchange rate utilized at WU agencies "may" differ from that utilized for online money transfers, such representation is false because the foreign exchange rate utilized at WU agencies **always** is different, and **always** is less favorable to the consumer. Prior to accepting and finalizing money transfer transaction at foreign WU agencies, WU never discloses to consumers that WU makes money on the foreign exchange rate in addition to the transfer fee that WU charges, or that the foreign exchange rate utilized at the agency is less favorable than that utilized if a money transfer is effectuated online.

14. WU does not advise consumers of the percentage margin that it adds to foreign exchange rates, so as to conceal the onerous and unconscionable margin that it in fact applies.

Through its online website WU intentionally creates the impression that the transaction is not expensive by advertising a relatively modest transaction fee, when in reality the transaction is highly expensive due to the hidden margin added to the foreign exchange rate, which WU does not disclose.

15. To illustrate the onerous, unconscionable hidden foreign exchange margin utilized by WU, on March 17, 2020 the market exchange rate for conversion of Euros to U.S. Dollars was 1 EUR = $1.09746 USD. *See* **Exhibit C**. Hence, for every 100€ a transferee would receive approximately $110 at the market exchange rate. The rate utilized by WU on this same day on its online site to estimate transaction fees (www.westernunion.com), however, was instead 1 EUR = 1.0536 USD, **plus** a disclosed transaction fee of 2.90€ ($3.19). *See* WU Transaction Fee Calculation, annexed as **Exhibit D**. Hence, for every 100€ sent by WU on March 17, the transferee would receive but approximately $105, instead of a fair market rate of $110. The margin added to the market foreign exchange rate equals approximately 5% of the total amount of the transaction, and a transfer fee of 2.9% *also* must be paid to WU.

16. A consumer making the above transfer at a foreign WU agency would not be advised that the margin added by WU to the foreign exchange rate equals some 5% of the total transaction cost, and that this hidden fee is being paid in addition to the disclosed transfer fee. Hence, the consumer is stripped of any ability to make an informed choice as to whether to utilize WU services. Moreover, the consumer appearing on March 17 at a foreign WU agency to transfer 100€ would not even have been afforded the foreign exchange rate of 1 EUR = $1.0536 USD as advertised and represented by WU; the actual foreign exchange rate would have been much less favorable to the consumer—a fact not disclosed by WU.

7

17. WU also fails to disclose to consumers that the more money one transfers, the better the foreign exchange rate utilized by WU is for the consumer, and the better the chance that there will be a lesser or even no transfer fee charged by WU to the consumer. For example, using its online site (www.westernunion.com) on March 17, 2020 to determine the cost to send 100€ to the United States in U.S. dollars, WU represented that the foreign exchange rate applied to the transaction was 1 EUR = $1.0536 USD, meaning that the transferee would have received $105 USD and the sender would have paid a 2.90€ transaction fee. *See* **Exhibit D**. If a WU customer were sending $5,000, however, the rate applied to the transaction would have been 1 EUR = $1.0741 USD, and there would have been but a 1€ transfer fee charged. *See* WU Fee Calculation, annexed as **Exhibit E**. Because WU fails to disclose that its foreign exchange rates and fees are better for the consumer if the consumer transfers more money, no consumer would know this without performing a comparative analysis online. Certainly no consumer walking into a foreign WU agency to transfer money would know this, because WU fails to disclose it. This non-disclosure by WU again enables it to unfairly extort money from consumers, because it results in consumers being unaware of the harm in sending multiple money orders over a relatively short time frame, as opposed to sending one larger money order and thereby saving money to the detriment of WU.

18. WU also fails to advise and disclose to consumers who send money from foreign WU agencies that it may be less expensive to pay for a money order using cash, as opposed to a debit card. Indeed, on its online site WU represents that for 1€ sent to Canada, the cost using a credit card is 4.90€, whereas WU represents the cost using cash to be but 2.90€.

Nowhere does WU disclose to persons utilizing a foreign WU agency that it is more economical for the consumer to utilize cash.

19. WU also fails to advise and disclose to consumers who send money from foreign WU agencies that, depending on the amount of the money transfer, the transferee may be unable to immediately receive cash at a WU agency close by. WU misrepresents that money transfers are available to transferees "in minutes," when such is not always the case. WU fails to assure that its agencies have sufficient cash on hand; it is in WU's interest not to so assure, as the longer it takes for a transferee to be paid the longer WU has interest-free use of the money transferred.

## CLASS ALLEGATIONS

20. Plaintiff brings this suit individually and as a class action on behalf of others similarly situated who within the six (6) years preceding the filing of the complaint effectuated WU money orders from France at a WU agency (i) to the United States, or (ii) to other countries when WU was paid with funds debited from a United States bank account (the "Class"), pursuant to New Jersey Court Rule 4:32. Subject to additional information obtained through further investigation and/or discovery, the definition of the Class may be expanded or narrowed.

21. The proposed Class consists of all persons who for the six (6) years preceding the filing of the complaint sent a WU money order/transfer from a WU agency in France to the United States, or to other countries when WU was paid with funds debited from a United States bank account.

22. This action has been brought and may properly be maintained as a class action pursuant to New Jersey Court Rule 4:32, because plaintiff's claims are typical of those of the

9

Class members, as all are based upon the same facts and legal theories.  Indeed, a similar

class was certified in November of 2015 in Argentina's National Commercial Court No. 19,

in which the plaintiff Argentinian consumer association, Consumidores Financieros

Asociacion Civil para su Defensa, alleged that the fees for money transfers sent from

Argentina were excessive, and that consumers were provided with inadequate information

about foreign exchange rates.  *See* WU Form 10-Q at 18-19 filed with the Securities

Exchange Commission ("SEC") for the period ended September 30, 2020.

23.  The Class has a well-defined community interest in the litigation:

**Numerosity:**  The members of the Class are so numerous that joinder of all members is impracticable.  On its website, WU boasts that "in 2018 we completed more than 800 million transactions."  The Class is believed to be comprised of persons who utilized WU to transfer money from a Western Union agency outside the United States to the United States, or from a WU agency outside the United States to another country when payment for the transfer was debited from a U.S. bank account. The identities of all Class members are readily ascertainable from WU records, and are estimated to total many thousands if not millions of persons.

**Commonality:** Common question of law and fact exist as to all members of the Class. These common questions predominate over questions affecting only individual Class members, and include:

a.  Whether WU failed to disclose to consumers appearing at a foreign WU agency in France to send money, **prior to** their transactions being effectuated, a material fact, namely, that WU would add a margin to the foreign exchange rate utilized by WU to the detriment of consumers.

b.  Whether WU failed to disclose to consumers appearing at a foreign WU agency in France to send money a material fact, namely, the amount of the margin that would be applied to the foreign exchange rate utilized by WU to the detriment of consumers.

c.  Whether WU misrepresented the amount of the total cost to send money by consumers appearing at a foreign WU agency in France.

d.  Whether WU failed to disclose to consumers appearing at a foreign WU agency in France to send money a material fact, namely, that it is less expensive to pay for a money order using cash, than it is by using a debit card.

10

e. Whether WU failed to disclose to consumers appearing at a foreign WU agency in France that WU applies a better foreign exchange rate and charges less of a transfer fee if more rather than less money is sent.

f. Whether WU intentionally concealed material facts from consumers appearing at foreign WU agencies in France to send money.

g. Whether WU falsely represented to consumers appearing at foreign WU agencies in France that the only fee charged was the "transfer fee" disclosed by WU.

h. Whether WU falsely represented to consumers appearing at foreign WU agencies in France that the foreign exchange rate utilized by WU was that in effect and utilized by WU, when in reality the rate was less favorable to consumers than that in effect and utilized by WU as represented on its online websites.

i. Whether WU failed to disclose to consumers appearing at foreign WU agencies in France that they could obtain better foreign exchange rates if they transferred money via WU online.

j. Whether WU falsely represented to consumers online that foreign exchange rates utilized at WU agencies "may" differ from those utilized by WU online, when WU knew that the rates utilized by WU in foreign agencies in France always were far less favorable to consumers than those represented by WU online.

k. Whether WU violates the New Jersey Consumer Fraud Act by failing to provide consumers with the contracts signed by them at the time of signing;

l. Whether WU falsely represents to consumers that money transferred is available "in minutes."

**Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have claims arising out of defendant's common uniform course of conduct complained of herein.

**Adequacy:**   Plaintiff will fairly and adequately protect the interests of the Class members insofar as plaintiff has no interests that are adverse to the absent Class members.  Plaintiff is committed to vigorously litigating this matter.   Plaintiff and his law firm are experienced in litigating complex legal issues, including New Jersey Consumer Fraud Act cases, fraud and misrepresentation cases, and class actions.  Neither plaintiff nor his law firm has any interest which might cause them not to vigorously pursue the instant class action lawsuit.

**Superiority:**   A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

11

24.  Based upon discovery and further investigation, plaintiff may move for class certification using modified definitions of the Class, Class Claims, and the Class Period, or seek class certification only as to particular issues.

## COUNT ONE
## (AGENCY LIABILITY)

25.  Plaintiff incorporates the previous allegations as if fully set forth herein.

26.  WU is liable for the acts of its subsidiaries and/or agents which operate WU agencies in France and elsewhere around the world.

27.  Such subsidiaries and/or agents have actual authority to act as WU agents.

28.  Such subsidiaries and/or agents have apparent authority to act as WU agents.

29.  WU subsidiaries and/or agents utilize the WU logo, WU forms, and WU centers and agents in the United States at which money is received; thus, WU affirmatively vests the foreign subsidiaries and/or agents with actual and apparent authority and makes plaintiff and consumers believe that they are in fact dealing with WU.

30.  WU agencies in France are located in post offices, much as they were in the United States years ago, and French post offices all "double" as traditional post offices and as banks operating as "La Banque Postale" (the Post Office Bank) where checking and other financial accounts can be opened like those offered by traditional banks.

31.  Forms utilized by plaintiff and consumers to send money from France through the La Banque Postale from which WU agents operate state that La Banque Postale is "a Western Union agent."

32.  When one enters the WU website at www.westernunion.com  and clicks on "France" as a country, the site refers everywhere to "Western Union," and it is a "Western Union/WU" website.  The site states that the "Western Union" name and logos are registered

12

trademarks of The Western Union Company.  The site instils the belief in consumers sending money from France that they are dealing with WU.

33.  The WU website also instructs consumers wanting to send money from a physical location in France to "easily find Western Union **agent** locations in France online by clicking here." (emphasis added).  The reference to Western Union agents in France reinforces consumer belief that the consumer is dealing with WU.

34.  The WU website also allows consumers to search for locations in France, and the locations displayed are said to be "Western Union/WU" locations.

35.  To send money through WU at the post office, one must go to the French Postal Bank window, and prominently displayed at the post offices where plaintiff effectuated money transfers was the WU logo, associated with that of "La Banque Postale."  At times, the post offices also exhibited WU advertisements/publicity.

36.  To send money through WU from France, one must complete a form, and the form bears the Western Union\WU logo. The form expressly states in French that "La Banque Postale is an agent de Western Union."  This (along with the association of La Banque Postale logo and that of WU on the sign posted at the door of the Post Office) reinforces the impression given to plaintiff and undoubtedly to other consumers that they are transacting business with WU through the French Post Office Bank, as agent of WU, because the French Post Office Bank is expressly designated as a WU agent.

37.  The form also warns users against fraud on the front and back of the form, and in doing so refers to persons utilizing the services of **Western Union**.  In the fraud section at the bottom of the first page, the form warns that money transferred to individuals is transferred rapidly, and that once money is transferred, except in limited circumstances,

"**Western Union**" will not be in a position to reimburse the sender even if fraud is involved. It advises that if the user believes he has been the victim of fraud, the user should contact **Western Union's** telephonic assistance at the telephone number indicated.  In utilizing the form, plaintiff always believed that he was dealing with WU.  *Id.*

38.  The WU logo is a registered trademark, and it could not have been utilized without the affirmative consent and authorization of WU.  WU's granting of consent to post WU logos at physical locations in France at a minimum created apparent authority on behalf of the French Agent.  What also created apparent authority and also is evidence of actual authority was the posting of WU publicity at physical locations in France, WU's consent to the French Agent utilizing forms which reflect the WU logo on them and which refer to WU and to the French Postal Bank being an agent of WU, and all of the statements posted by WU on its French website.  Anyone such as plaintiff or other consumers would reasonably have believed that they were dealing with WU.

39.  The Form 10-Q for the quarterly period ended September 30, 2020 filed by WU with the SEC makes clear that WU operates **as a principal in foreign countries through a global network of agents** with express authority and which are all controlled by WU, and that WU derives substantial revenue from consumer money transfers originating overseas as to which WU controls all aspects of the transactions including the setting of exchange rates. WU has represented to the SEC:

- WU "is a leader in global money movement and payment services, providing people and businesses with fast, reliable, and convenient ways to send money and make payments around the world.  The Western Union ® brand is globally recognized."  Form 10-Q at 8.

- "The Company's services are primarily available through a network of agent locations in more than 200 countries and territories."  *Id.*

14

- "Cost of services primarily consists of agent commissions." *Id.* at 41.

- "Each location in the Company's agent network is capable of providing one or more of the Company's services." *Id.* at 8.

- "The Company's multi-currency money transfer service is provided through one interconnected global network where a money transfer can be sent from one location to another around the world. This service is available for international cross-border transfers." *Id.*

- We provide our services primarily through a network of agent locations in more than 200 Countries and territories. We manage foreign exchange risk through the structure of the business and an active risk management process. … In certain consumer money transfer … transactions involving different send and receive currencies, we generate revenue based on the difference between the exchange rate set by us to the consumer or business and the rate available in the wholesale foreign market, helping to provide protection against currency fluctuations. *Id.* at 51-52.

- Our Consumer-to-Consumer operating segment facilitates money transfers between two consumers, primarily through a network of third-party agents. Our multi-currency money transfer service is provided through one interconnected global network where a money transfer can be sent from one location to another around the world. This service is available for international cross-border transfers." *Id.* at 37.

- "Our Consumer-to-Consumer money transfer service … is provided through one interconnected global network where a money transfer can be sent from one location to another around the world. The segment includes five geographic regions [one of which is Europe and Russia] whose functions are primarily related to generating, managing, and maintaining agent relationships and localized marketing activities." *Id.* at 43.

- "The Company's revenues are primarily derived from consideration paid by customers to transfer money. These revenues vary … based upon factors such as … whether the money transfer involves different send and receive currencies, the difference between the exchange rate set by the Company to the customer and the rate available in the wholesale foreign exchange market." *Id.* at 10.

- "For the substantial majority of the Company's revenues, the Company acts as the principal in transactions and reports revenue on a gross basis, as the Company controls the service at all times prior to transfer to the customer, is primarily responsible for fulfilling the customer

15

contracts, has the risk of loss, and has the ability to establish transaction prices. Revenue is recognized net of any taxes collected from customers, which are subsequently remitted to governmental authorities." *Id.*

- "For the Company's money transfer services … [t]he transaction price is comprised of a transaction fee and the difference between the exchange rate set by the Company to the customer and the rate available in the wholesale foreign exchange market." *Id.*

- "In the majority of the Company's foreign exchange and payment services, the Company makes payments to the recipient to satisfy its performance obligation to the customer, and therefore, the Company recognizes revenue on foreign exchange and payment services when this performance obligation has been fulfilled. Revenues from foreign exchange and payment services are primarily comprised of the difference between the exchange rate set by the Company to the customer and the rate available in the wholesale foreign exchange market." *Id.*

- "Possible events or factors that could cause results or performance to differ materially from those expressed in our forward-looking statements include … exposure to foreign exchange rates, including the impact of the regulation of foreign exchange spreads on money transfers and payment transactions." *Id.* at 36.

- "Possible events or factors that could cause results or performance to differ materially from those expressed in our forward-looking statements include … failure to maintain our agent network." *Id.*

- "Our revenues and operating income for the three and nine months ended September 30, 2020 were negatively impacted by fluctuations in the United States dollar compared to foreign currencies." *Id.* at 38.

- "Due to the significance of the effect that foreign exchange fluctuations against the United States dollar can have on our reported revenues, constant currency results have been provided … for consolidated revenues. … Constant currency results assume foreign revenues are translated from foreign currencies to the United States dollar net of the effect of foreign currency hedges, at rates consistent with those in the same period of the prior year." *Id.* at 39.

- "Revenues are primarily derived from consideration paid by customers to transfer money. These revenues vary by transaction based upon factors such as …. whether the money transfer involves different send and receive currencies, the difference between the exchange rate we set

16

to the customer and the rate available in the wholesale foreign exchange market." *Id.*

- "COVID-19, which caused governments around the world to institute various protective measures … has … negatively impacted our ability to offer services through some of our retail agent locations across all our regions." *Id.* at 45. "Revenues in the EU … regions … were impacted by transaction declines in retail money transfers." *Id.* at 45.

- "We have historically implemented price reductions or price increases throughout many of our global corridors. … Price reductions generally reduce margins and adversely affect financial results in the short term." *Id.* at 45.

40.  WU is liable for the wrongful acts of its subsidiaries and/or agents as alleged at Counts Three through Seven, as its subsidiaries and/or agents acted with actual or apparent authority.

## COUNT TWO
## (VICARIOUS LIABILITY)

41.  Plaintiff incorporates the previous allegations as if fully set forth herein.

42.  WU is involved in the day-to-day operations of its subsidiary and/or agents and their running of foreign WU agencies.

43.  WU exercises complete dominion and control over its subsidiaries and/or agents in their running of foreign WU agencies and the conduct of consumer money transfer transactions.  As reported to the SEC, WU controls the currency exchange rates utilized, controls risks associated with exchange rates, controls the forms utilized, controls the fees charged and controls all other aspects of the transactions.

44.  WU is directly obligated to consumers in foreign countries making money transfers, and the consumer contracts are with WU.  *See* WU Form 10-Q at 10 (WU "is primarily responsible for fulfilling the customer contracts;" "In the majority of the

17

Company's foreign exchange and payment services, … [WU] makes payments to the recipient to satisfy its performance obligation to the customer").

45. As reported to the SEC, there are contractual and financial arrangements between WU and its subsidiaries and/or agents relating to their running of foreign WU agencies, and WU subsidiaries and/or agents are paid commissions by WU as concerns each consumer money transfer occurring in a foreign country such as France. It is WU, not its agents, that derives the profit consisting of the spread between the exchange rate charged the consumer effectuating a money transaction in a foreign country and wholesale exchange rates available to WU.

46. WU "acts as the principal in transactions and reports revenue on a gross basis, as the Company controls the service at all times prior to transfer to the customer, is primarily responsible for fulfilling the customer contracts, has the risk of loss, and has the ability to establish transaction prices. Revenue is recognized net of any taxes collected from customers, which are subsequently remitted to governmental authorities." WU Form 10-Q at 10.

47. WU directly derives and receives a flow of money from consumer money transfers emanating from France and other foreign countries. In the three months ended September 30, 2020, WU derived $358.6 million from consumer money transfers from Europe and Russia/CIS. *Id.* at 11. In the nine months ended September 30, 2020, WU Derived $960.7 million from consumer money transfers from Europe and Russia/CIS. *Id.* For the three months ended September 30, 2020, WU had 3% revenue growth derived from consumer money transfers in Europe and Russia/CIS. *Id.* at 44. For the nine months ended September 30, 2020, WU had 4% revenue growth derived from consumer money transfers in

18

Europe and Russia/CIS. *Id.* For the three months ended September 30, 2020, revenue to WU from the EU and Russia/CIS accounted for 33% of its foreign revenue, whereas for the nine months ended September 30, 2020 such revenue accounted for 32% of its foreign revenue. *Id.*

48. WU is vicariously liable for the wrongful acts of its subsidiaries and/or agents as alleged at Counts Three through Seven.

## COUNT THREE
## (FRAUDULENT NON-DISCLOSURES

49. Plaintiff incorporates the previous allegations as if fully set forth herein.

50. The fact that WU adds a margin to foreign exchange rates is material.

51. The amount of the margin added by WU to foreign exchange rates is material.

52. The fact that it is more expensive to pay for WU money orders by using a debit card than by paying cash is material.

53. The fact that WU provides a better foreign exchange rate and charges less of a transfer fee if more rather than less money is sent, is material.

54. The fact that cash sent through WU may not be immediately available to a WU transferee is material.

55. The fact that WU affords consumers a better foreign exchange rate if money transfers are effectuated online as opposed to at foreign WU agencies, is material.

56. WU failed to disclose the above material facts to Guarino and other similarly situated consumers each and every time that WU effectuated a money order transaction from a foreign WU agency for Guarino or such other consumer members of the Class. Apart from the transactions detailed above at paragraph 3 and at **Exhibit A**, records of all such transactions are uniquely within the possession and knowledge of WU.

57.  WU's failure to disclose was intentional, and intended to enable WU to reap greater profit on each transaction.

58.  WU had particular, exclusive knowledge of the material facts which it did not disclose, and had a duty to disclose them to Guarino and other consumers similarly situated because such facts were material to the transaction.  Moreover, WU affirmatively concealed such facts from Guarino and other consumer members of the Class for its own benefit.

59.  Guarino and other consumer Class members were damaged because of WU's fraudulent non-disclosure of material facts, as they entered into transactions and were charged more by WU than that which it had caused them to believe would be the case.

## COUNT FOUR
### (FRAUDULENT MISREPRESENTATION)

60.  Plaintiff incorporates the previous allegations as if fully set forth herein.

61.  WU knowingly misrepresented material facts to Guarino and other consumer members of the Class each and every time that WU effectuated a money order transaction from a foreign WU agency for Guarino or such other consumer members of the Class.  Apart from the transactions detailed above at paragraph 3 and at **Exhibit A**, records of all such transactions are uniquely within the possession and knowledge of WU.

62.  In affirmatively providing limited material facts concerning particular money transfer transactions, WU falsely represented to Guarino and to consumers that the transfer fee was the only fee being charged, when WU was in fact adding a margin to the foreign exchange rate utilized by WU without disclosing the onerous and unconscionable nature of the margin.

63.  WU also falsely represented to Guarino and to consumers that the WU foreign exchange rate then in effect was utilized by WU, when in fact the foreign exchange rate

20

charged by WU at foreign WU agencies was far less favorable to consumers than that posted by WU online on WU websites.

64. WU also falsely represented to Guarino and to consumers that the foreign exchange rate utilized at WU agencies "may" differ from that utilized for online transfers, when WU knew that the rate utilized at WU agencies **always** differs, and **always** is less favorable to the consumer.

65. WU also falsely represented to Guarino and to consumers that money transferred is available to the transferee in "minutes," when it may often take days for the transferee to be paid in cash because WU does not assure that its agencies have sufficient cash on hand so that WU can unfairly have interest-free use of the money transferred.

66. WU intended that Guarino and other consumer Class members rely and act upon its false representations, and Guarino and other Class members reasonably so relied without knowledge of the falsity of WU's misrepresentations.

67. WU and other consumer Class members were damaged as a direct result of WU's fraudulent misrepresentations, as they entered into transactions and were charged more by WU than that which it had caused them to believe would be the case.

## COUNT FIVE
### (NEGLIGENT OMISSIONS AND FALSE REPRESENTATIONS)

68. Plaintiff incorporates the previous allegations as if fully set forth herein.

69. WU's non-disclosures and misrepresentations, as detailed above, were negligently or recklessly made.

70. Guarino and similarly situated consumers, to whom WU owed a duty to act with care, were damaged by the negligence and recklessness of WU.

21

71.  It was foreseeable by WU that Guarino and similarly situated consumers would be injured by WU's non-disclosures and misrepresentations.

72.  Guarino and other consumers forming the Class have suffered damage as a result of WU's negligent non-disclosures and misrepresentations.

## COUNT SIX
## (VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT)

73.  Plaintiff incorporates the previous allegations as if fully set forth herein.

74.  By agreeing to transfer money in exchange for a fee, WU engaged in a "sale" as that term is defined by NJSA 56:8-1(e).

75.  Plaintiff and members of the Class are "persons" as that term is defined by NJSA 56:8-1(d).

76.  An "unlawful practice" is defined by NJSA 56:8-2 as the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."

77.  WU engaged in unlawful practices, in that it concealed material facts from Guarino and the Class members, misrepresented material facts to Guarino and the Class members and acted unconscionably each and every time that WU effectuated a money order transaction from a foreign WU agency for Guarino or such other consumer members of the Class.  Apart from the transactions detailed above at paragraph 3 and at **Exhibit A**, records of

22

all such transactions are uniquely within the possession and knowledge of WU. WU violated the New Jersey Consumer Fraud Act by:

- Failing to disclose that WU was adding a margin to the foreign exchange rates prior to the transactions being effectuated;

- Failing to disclose the amount of the margin;

- Failing to disclose that the amount of the margin added to foreign exchange rates was onerous and unconscionable;

- Stripping Guarino and Class members of the ability to form an informed decision as to whether to utilize WU's services;

- Failing to disclose that it is cheaper to send money by paying cash than by utilizing a debit card;

- Failing to disclose that consumers can obtain better exchange rates from WU and pay less transfer fees to it if they send more rather than less money;

- Misrepresenting that the prevailing WU foreign exchange rate would be utilized;

- Misrepresenting that the transfer fee was the only amount charged by WU;

- Misrepresenting that the foreign exchange rate being utilized was that in effect and utilized by WU, when in reality the rate was less favourable to consumers than that in effect and utilized by WU as represented on its online websites;

23

- Failing to disclose that consumers can obtain better foreign exchange rates if they transfer money with WU online;

- Misrepresenting that rates utilized at WU agencies "may" differ from those utilized by WU online, when WU knew that the rates utilized by WU in foreign agencies always were far less favourable to consumers than those represented by WU online;

- Failing to provide consumers with the contracts signed by them at the time of signing; and

- Misrepresenting that transferees can receive cash transferred in "minutes."

78.  Pursuant to NJSA 56:8-2.11 and 2.12, as well as NJSA 56:8-19, WU is liable to Guarino and the Class members for treble the amount of all monies paid by Guarino and Class members in undisclosed and/or misrepresented margins and fees, as said monies were acquired through WU's unlawful practices.  Pursuant to NJSA 56:8-19 WU also is liable for reasonable attorneys' fees, filing fees, and costs.

### COUNT SEVEN
### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

79.  Plaintiff incorporates the previous allegations as if fully set forth herein.

80.  Every transaction in which WU agreed to send money for Guarino and other Class members involved a contract.

81.  Apart from the transactions detailed above at paragraph 3 and at **Exhibit A**, records of all such contracts are uniquely within the possession and knowledge of WU.

82.  Implied in each contract was a duty of good faith and fair dealing.

24

83.  WU breached the implied covenant of good faith and fair dealing as regards each transaction in which it agreed to send money for Guarino and other Class members, in that, *inter alia*, it acted onerously and unconscionably by:

- Failing to disclose that WU was adding a margin to foreign exchange rates prior to the transactions being effectuated;

- Failing to disclose the amount of the margin;

- Failing to disclose that the amount of the margin added to foreign exchange rates was onerous and unconscionable;

- Stripping Guarino and class members of the ability to form an informed decision as to whether to utilize WU's services;

- Failing to disclose that there would have been less fees had cash been paid for the money orders, as opposed to using a debit card;

- Failing to disclose that consumers can obtain better exchange rates from WU and pay less transfer fees to it if they send more rather than less money;

- Misrepresenting that the prevailing WU foreign exchange rate would be utilized;

- Misrepresenting that the transfer fee was the only amount charged by WU;

- Misrepresenting that the foreign exchange rate being utilized was that in effect and utilized by WU, when in reality the rate was less favourable to consumers than that in effect and utilized by WU as represented on its online websites;

- Failing to disclose that consumers can obtain better foreign exchange rates if they transfer money with WU online;

- Misrepresenting that rates utilized at WU agencies "may" differ from those utilized by WU online, when WU knew that the rates utilized by WU in foreign agencies always were far less favourable to consumers than those represented by WU online;

- Failing to provide consumers with the contracts signed by them at the time of signing; and

- Misrepresenting that transferees can receive cash transferred in "minutes."

84.  Guarino and consumers forming the Class were damaged as a result of WU's breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, plaintiff, individually and on behalf of the Class, demands judgment against WU as follows:

**COUNT ONE:**  Holding WU liable for the wrongful acts of its subsidiaries and/or agents who acted with actual and/or apparent authority, as alleged at Counts Three through Seven.

**COUNT TWO:**  Holding WU vicariously liable for the wrongful acts of its subsidiaries and/or agents as alleged at Counts Three through Seven.

**COUNT THREE:**  For compensatory damages, punitive damages, costs of suit, and pre- and post-judgment interest.

**COUNT FOUR:**  For compensatory damages, punitive damages, costs of suit, and pre- and post-judgment interest.

26

**COUNT FIVE:**  For compensatory damages, costs of suit, and pre- and post-judgment interest.

**COUNT SIX:**  For treble damages pursuant to NJSA 56:8-19, and for an award of reasonable attorneys' fees, filing fees and costs pursuant to NJSA 56:8-19, plus pre- and post-judgment interest.

**COUNT SEVEN:**  For compensatory damages, costs of suit, and pre- and post-judgment interest.

**ON ALL COUNTS:**  For such other and further relief as the Court may deem appropriate, just and equitable.

GUARINO & CO. LAW FIRM, LLC
*Attorneys for Plaintiff*

BY: _____
Philip L. Guarino

300 Main Street, Suite 552
Madison, NJ 07940
Telephone:  973/615-1791
Fax:  973/528-0635
E-Mail:  guarinolaw@gmail.com

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

GUARINO & CO. LAW FIRM, LLC
*Attorneys for Plaintiff*

BY: _____
Philip L. Guarino

300 Main Street, Suite 552
Madison, NJ 07940
Telephone:  973/615-1791
Fax:  973/528-0635
E-Mail:  guarinolaw@gmail.com

## CERTIFICATION

The undersigned certifies that, to the best of his knowledge:

1.  The matter in controversy is not the subject of any other action or proceeding in

any Court, or of a pending arbitration proceeding.

2. No other action or arbitration proceeding is contemplated concerning the matter in

controversy.

3.  There are no other parties who should be joined in this action.

GUARINO & CO. LAW FIRM, LLC
*Attorneys for Plaintiff*

BY: _____
Philip L. Guarino

300 Main Street, Suite 552
Madison, NJ 07940
973/615-1791
Fax:  973/528-0635
e-mail: guarinolaw@gmail.com
Attorneys for Plaintiff

28

# EXHIBIT A

## RECEPISSE D'EMISSION WESTERN UNION

EXPEDITEUR :                    Tél : +33 621323189
M GUARINO PHILIPPE

Adresse : 1249 CHEMIN DES CABRIERES VILLA 21
06250 MOUGINS FRANCE

BENEFICIAIRE :                  Tél :
MME GUARINO ALEXANDRE
Adresse :
    CANADA

N° d'identification (MTCN) : 8203688383
Date : 09/03/2020
Bureau : 292200 PONT L ABBE
Montant à transférer :    1582,12 EUR        Montant transféré :   2145,00 CAD
Frais d'envoi       :      64,00 EUR         Taux de change    : 1 EUR = 1.3557741 CAD

Montant total       :    1646,12 EUR         Référence : 292200C090000430

Pays de destination : CANADA
ID : CNI / N° 110406100151 / 01.04.2011 / SOUS-PREFECTURE / GRASSE
   / 20.12.1957 / NEWYORKETATSUNIS

**Protégez-vous contre les fraudes :** Utilisez les services Western Union uniquement pour envoyer de l'argent aux membres de votre famille ou à vos amis. N'envoyez jamais de l'argent à quelqu'un que vous n'avez jamais rencontré en personne. Les fraudeurs essaient parfois d'obtenir des transferts d'argent de leurs victimes. Ne transférez jamais de l'argent dans les cas suivants : pour un cas d'urgence dont vous n'avez pas eu confirmation, pour un achat en ligne, pour une protection anti-virus, pour un paiement lié à un bien locatif tel qu'un d'un dépôt ou acompte, pour récupérer des gains dans le cadre d'une loterie ou d'un concours, pour le paiement de charges ou taxes, pour un don à une association caritative, pour une offre d'emploi, pour l'évaluation d'un service, pour payer des frais liés à une carte de crédit ou un prêt, pour résoudre une question d'immigration, dans le cadre d'un paiement faisant suite à un appel de télémarketing. Aux Etats-Unis, les télévendeurs n'ont pas le droit de vendre un produit par téléphone et d'en recevoir le paiement par transfert d'argent, c'est illégal. Si vous transférez de l'argent à une personne, elle recevra les fonds rapidement. Une fois l'argent versé, Western Union n'est pas en mesure, sauf dans des circonstances limitées, de vous rembourser même si vous êtes victime d'une fraude. Si vous pensez être victime d'une fraude, appelez l'assistance téléphonique Western Union dédiée à la fraude au 0.805 980 074.

**Protection des données :** Western Union Payment Services Ireland Limited est responsable du traitement de vos données à caractère personnel lorsque vous utilisez nos services en agence, bureau transactionnel, ou nos services digitaux, dans le cadre notamment des transferts d'argent, des paiements de factures et des programmes de fidélité. Nous utilisons ces informations pour effectuer les transferts d'argent, vous offrir des services et nous conformer aux obligations légales applicables. Nous pouvons recourir à des tiers pour authentifier votre identité et gérer les risques liés à la fraude. Nous pouvons transférer vos données à caractère personnel dans nos centres de données aux Etats-Unis. Vous avez le droit d'accéder, de corriger, d'effacer, de demander la limitation de traitement et la portabilité de vos données à caractère personnel sous réserve des conditions prévues par la réglementation sur la protection des données personnelles ainsi que le droit de vous opposer au traitement des données en appelant le 0 800 900 191 ou en visitant le site westernunion.com/fr/fr/contact-us.html. Pour plus d'informations concernant nos procédures en matière de données à caractère personnel, vous pouvez demander à notre agent de vous remettre une copie de notre notice d'information détaillée «Déclaration de protection des données».

**En signant ce formulaire,** je confirme avoir pris connaissance de l'avertissement contre les fraudes et déclare n'effectuer de transfert de fonds pour aucune des raisons précitées. Je reconnais avoir pris connaissance et accepté les conditions générales de service Western Union figurant au recto et verso de ce document.

☐ J'accepte de recevoir des communications électroniques de marketing, sur les services, offres ou promotions de Western Union. Je peux révoquer ou modifier ce consentement au 0800 900 191* ou sur www.westernunion.com/fr/fr/contact-us.html.

SIGNATURE DU CLIENT :                              SIGNATURE DE L'AGENT :

                                                   FEUILLET À CONSERVER PAR LE CLIENT

La Banque Postale, agent de Western Union.
Western Union Payment Services Ireland Limited. Unit 9, Richeview Office Park, Clonskeagh, Dublin 14, Ireland.
Pour toute autre demande, veuillez contacter le 09 69 36 60 50

# EXHIBIT B

# The Euro to Canadian Dollar Historical Exchange Rates Conversion Page.

## Converting Euros into Canadian Dollars over the past 365 days were done using the below spot market rates.

Year-to-Date Performance for the Euro to Canadian Dollar Exchange Rate

Best Exchange Rate: 1.584 on 18/03/2020

Worst Exchange Rate: 1.4291 on 19/02/2020

Mid Exchange Rate: 1.4669 on 02/11/2019

Today's Live Rate: 1 EUR = 1.5857 CAD

Best Retail Rate: 1 EUR = 1.5746 CAD

Indicative Bank Rate: 1 EUR = 1.5235 CAD

Find Out More

| March 2020 | | | | | | |
|----|----|----|----|----|----|----|
| SU | MO | TU | WE | TH | FR | SA |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

Historical Graph For Converting Euros into Canadian Dollars



EUR to CAD :1.58399
(c) 2020 poundsterlinglive.com

Table of 1 Euro to Canadian Dollar Exchange Rate for Past 365 Days

Invert table to CAD/EUR

| Date | | Open | Close | Mid | Link |
|------|---|------|-------|-----|------|
| Wednesday 18 March 2020 | 1 EUR | 1.5685 CAD | 1.5840 CAD | 1.5747 CAD | Euros to Canadian Dollars rate for 18/03/2020 |
| Tuesday 17 March 2020 | 1 EUR | 1.5640 CAD | 1.5685 CAD | 1.5569 CAD | Euros to Canadian Dollars rate for 17/03/2020 |
| Monday 16 March 2020 | 1 EUR | 1.5381 CAD | 1.5636 CAD | 1.5501 CAD | Euros to Canadian Dollars rate for 16/03/2020 |
| Sunday 15 March 2020 | 1 EUR | 1.5322 CAD | 1.5381 CAD | 1.5402 CAD | Euros to Canadian Dollars rate for 15/03/2020 |
| Saturday 14 March 2020 | 1 EUR | 1.5322 CAD | 1.5322 CAD | 1.5322 CAD | Euros to Canadian Dollars rate for 14/03/2020 |
| Friday 13 March 2020 | 1 EUR | 1.5590 CAD | 1.5322 CAD | 1.5469 CAD | Euros to Canadian Dollars rate for 13/03/2020 |


PoundSterling
LIVE

MENU ≡

This website uses cookies. Learn more about our cookie policy.

| Date | | Open | Close | High | |
|---|---|---|---|---|---|
| Wednesday 11 March 2020 | 1 EUR | 1.5534 CAD | 1.5510 CAD | 1.5525 CAD | Euros to Canadian Dollars rate for 11/03/2020 |
| Tuesday 10 March 2020 | 1 EUR | 1.5568 CAD | 1.5539 CAD | 1.5570 CAD | Euros to Canadian Dollars rate for 10/03/2020 |
| Monday 9 March 2020 | 1 EUR | 1.5512 CAD | 1.5568 CAD | 1.5616 CAD | Euros to Canadian Dollars rate for 09/03/2020 |
| Sunday 8 March 2020 | 1 EUR | 1.5152 CAD | 1.5512 CAD | 1.5336 CAD | Euros to Canadian Dollars rate for 08/03/2020 |
| Saturday 7 March 2020 | 1 EUR | 1.5161 CAD | 1.5152 CAD | 1.5157 CAD | Euros to Canadian Dollars rate for 07/03/2020 |
| Friday 6 March 2020 | 1 EUR | 1.5028 CAD | 1.5161 CAD | 1.5129 CAD | Euros to Canadian Dollars rate for 06/03/2020 |
| Thursday 5 March 2020 | 1 EUR | 1.4911 CAD | 1.5031 CAD | 1.4987 CAD | Euros to Canadian Dollars rate for 05/03/2020 |
| Wednesday 4 March 2020 | 1 EUR | 1.4950 CAD | 1.4909 CAD | 1.4874 CAD | Euros to Canadian Dollars rate for 04/03/2020 |
| Tuesday 3 March 2020 | 1 EUR | 1.4849 CAD | 1.4951 CAD | 1.4894 CAD | Euros to Canadian Dollars rate for 03/03/2020 |
| Monday 2 March 2020 | 1 EUR | 1.4813 CAD | 1.4848 CAD | 1.4823 CAD | Euros to Canadian Dollars rate for 02/03/2020 |
| Sunday 1 March 2020 | 1 EUR | 1.4769 CAD | 1.4816 CAD | 1.4813 CAD | Euros to Canadian Dollars rate for 01/03/2020 |
| Saturday 29 February 2020 | 1 EUR | 1.4769 CAD | 1.4769 CAD | 1.4769 CAD | Euros to Canadian Dollars rate for 29/02/2020 |
| Friday 28 February 2020 | 1 EUR | 1.4722 CAD | 1.4769 CAD | 1.4793 CAD | Euros to Canadian Dollars rate for 28/02/2020 |
| Thursday 27 February 2020 | 1 EUR | 1.4522 CAD | 1.4721 CAD | 1.4630 CAD | Euros to Canadian Dollars rate for 27/02/2020 |
| Wednesday 26 February 2020 | 1 EUR | 1.4446 CAD | 1.4527 CAD | 1.4467 CAD | Euros to Canadian Dollars rate for 26/02/2020 |
| Tuesday 25 February 2020 | 1 EUR | 1.4415 CAD | 1.4447 CAD | 1.4428 CAD | Euros to Canadian Dollars rate for 25/02/2020 |
| Monday 24 February 2020 | 1 EUR | 1.4364 CAD | 1.4415 CAD | 1.4389 CAD | Euros to Canadian Dollars rate for 24/02/2020 |
| Sunday 23 February 2020 | 1 EUR | 1.4345 CAD | 1.4364 CAD | 1.4347 CAD | Euros to Canadian Dollars rate for 23/02/2020 |
| Saturday 22 February 2020 | 1 EUR | 1.4345 CAD | 1.4345 CAD | 1.4345 CAD | Euros to Canadian Dollars rate for 22/02/2020 |
| Friday 21 February 2020 | 1 EUR | 1.4305 CAD | 1.4345 CAD | 1.4331 CAD | Euros to Canadian Dollars rate for 21/02/2020 |
| Thursday 20 February 2020 | 1 EUR | 1.4291 CAD | 1.4304 CAD | 1.4303 CAD | Euros to Canadian Dollars rate for 20/02/2020 |
| Wednesday 19 February 2020 | 1 EUR | 1.4305 CAD | 1.4291 CAD | 1.4291 CAD | Euros to Canadian Dollars rate for 19/02/2020 |

 PoundSterling LIVE

MENU ≡

This website uses cookies. Learn more about our cookie policy.

# EXHIBIT C

World
Trusted
Currency
Authority

☐ **GET THE APP**

# 1 EUR = 1,09746

# USD

Conversion Euro en Dollar des États-Unis

2020-03-17 15:15 UTC

Tous les chiffres correspondent à des taux du **marché moyen** en direct, qui ne sont pas disponibles pour les consommateurs et qui sont donnés à titre d'information seulement.

## Want to send money from EUR to USD?

## Cookie Management

We use cookies to improve your experience.

- If you want to check exchange rates or access currency tools and services, click here for the XE.com privacy and cookie policy.
- If you want to make an international money transfer, click here for the XE Money Transfer Service privacy and cookie notice.
- To customize your cookies, click 'More Information' below. If you press the 'OK' button we will place preference, analytics, and tracking cookies on your device.

More Information        OK

**EXHIBIT D**

# Envoyer de l'argent en ligne

## Le pays de votre bénéficiaire et le montant de votre envoi

| Envoyer vers<br>États-unis | 🔍 |
|---|---|

| Montant envoyé<br>100.00 | EUR | ⇌ | Le bénéficiaire reçoit<br>105.36 | USD |
|---|---|---|---|---|

ⓘ Envoyez jusqu'à 50 000,00 EUR

### 1.00 EUR = 1.0536 US Dollar (USD)[2]

---

## Comment le bénéficiaire souhaite-t-il recevoir l'argent?

| ✓ | |
|---|---|
| 💲<br>Espèces[6] | 🏛<br>Compte bancaire |

---

## Comment voudriez-vous payer? [31]

| ✓ | | |
|---|---|---|
| 💳<br>Carte de crédit ou de débit[3]<br>En quelques minutes[1]<br>Frais[2,5] 2,90 EUR | 🏛<br>Transfert bancaire<br>**Enregistrer contre crédit/débit**<br>3 Jours ouvrés[1]<br>Frais[2,5] 1,00 EUR | 💵<br>Payer en espèces<br>En quelques minutes[1]<br>Frais[2,5] 5,90 EUR |

---

Appliquer la promotion/les points de récempense

---

| Continuer |
|---|

## Synthèse

Taux de change[2]

### 1.00 EUR = 1.0536 USD

---

| | |
|---|---|
| Montant du transfert[2,5] | 100.00 EUR |
| Frais de transfert[2,5] | + 2.90 EUR |
| Réduction promotionnelle | **Appliquer la promotion** |
| Total du transfert | 102.90 EUR |

Total Le bénéficiaire reçoit

105.36 USD

Disponibilité:[1]     En quelques minutes

---

⊖ Clauses de non-responsabilité et informations importantes

[1] Le service et les fonds peuvent être retardés ou indisponibles en fonction de différents facteurs, notamment du Service sélectionné, des options de remise différée sélectionnées, du montant envoyé, du pays de destination, de la disponibilité des devises, des aspects réglementaires et de protection des clients, des exigences d'identification, des restrictions de remise, des heures d'ouverture des points de vente et du décalage horaire (collectivement les « Restrictions »). Des restrictions supplémentaires peuvent s'appliquer. Reportez-vous à nos conditions générales pour plus d'informations.

[2] Western Union réalise également un bénéfice lors de la conversion de devises. Lorsque vous sélectionnez une société de transfert de fonds, comparez attentivement les frais de transfert ainsi que les taux de change. Les frais, les taux de change et les taxes peuvent varier en fonction de la marque, du canal et du lieu, selon différents facteurs. Les tarifs et taux de change sont sujets à modifications sans préavis.

[3] Si vous utilisez une carte de crédit, des frais d'avance de fonds pour l'émetteur de la carte et les intérêts éventuels associés peuvent s'appliquer. Pour éviter ou réduire ces frais, utilisez une carte de débit ou d'autres modes de paiement.

[5] Les frais de transfert susmentionnés sont calculés pour une transaction en ligne effectuée aujourd'hui. Les tarifs des transactions en ligne peuvent être différents de ceux pratiqués dans nos points de vente. Veuillez cliquer ici pour trouver un point de vente près de chez vous afin d'obtenir une estimation des frais.

[6] Votre Bénéficiaire peut retirer l'argent que vous lui avez transféré dans un point de vente Western Union de États-Unis .

[31] Le prix de chaque type de transfert d'argent dépend de nombreux facteurs, tels que la vitesse du transfert, la destination des fonds et d'autres. Veuillez sélectionner la méthode qui vous convient le mieux.

---

**EXHIBIT E**

# Envoyer de l'argent en ligne

## Le pays de votre bénéficiaire et le montant de votre envoi

| | |
|---|---|
| Envoyer vers<br>États-Unis | 🔍 |

| Montant envoyé | | | Le bénéficiaire reçoit | |
|---|---|---|---|---|
| 5000.00 | EUR | ⇄ | 5370.26 | USD |

ⓘ Envoyez jusqu'à 50 000,00 EUR

### 1.00 EUR = 1.0741 US Dollar (USD)[2]

## Comment le bénéficiaire souhaite-t-il recevoir l'argent?



Espèces[6]    Compte bancaire

## Comment voudriez-vous payer? [31]



| Carte de crédit ou de débit | Transfert bancaire[4]<br>**Enregistrer contre**<br>**crédit/débit** | Payer en espèces |
|---|---|---|
| En quelques minutes[1] | 3 Jours ouvrés[1, 13] | En quelques minutes[1] |
| Frais[2,5] 9,90 EUR | Frais[2,5] 1,00 EUR | Frais[2,5] 29,90 EUR |

**Pour payer par transfert bancaire :**

- Assurez-vous que le nom figurant sur votre compte bancaire correspond à celui indiqué sur votre profil, sinon nous refuserons ce paiement.

- Par ailleurs, nous n'acceptons pas les paiements effectués depuis des comptes professionnels.

Appliquer la promotion/les points de récempense

## Synthèse

Taux de change[2]

### 1.00 EUR = 1.0741 USD

| | |
|---|---|
| Montant du transfert | 5,000.00 EUR |
| Frais de[2,5] transfert | + 1.00 EUR |
| Réduction promotionnelle | **Appliquer la promotion** |
| Total du transfert | 5,001.00 EUR |

Total Le bénéficiaire reçoit

### 5370.26 USD

Disponibilité:[1,13]   3 Jours ouvrés

⊖ Clauses de non-responsabilité et informations importantes

[1] Le service et les fonds peuvent être retardés ou indisponibles en fonction de différents facteurs, notamment du Service sélectionné, des options de remise différée sélectionnées, du montant envoyé, du pays de destination, de la disponibilité des devises, des aspects réglementaires et de protection des clients, des exigences d'identification, des restrictions de remise, des heures d'ouverture des points de vente et du décalage horaire (collectivement les « Restrictions »). Des restrictions supplémentaires peuvent s'appliquer. Reportez-vous à nos conditions générales pour plus d'informations.

[2] Western Union réalise également un bénéfice lors de la conversion de devises. Lorsque vous sélectionnez une société de transfert de fonds, comparez attentivement les frais de transfert ainsi que les taux de change. Les frais, les taux de change et les taxes peuvent varier en fonction de la marque, du canal et du lieu, selon différents facteurs. Les tarifs et taux de change sont sujets à modifications sans préavis.

[4] Certaines banques facturent des frais pour des transferts nationaux ou internationaux. Vérifiez avec votre banque.

[5] Les frais de transfert susmentionnés sont calculés pour une transaction en ligne effectuée aujourd'hui. Les tarifs des transactions en ligne peuvent être différents de ceux pratiqués dans nos points de vente. Veuillez cliquer ici pour trouver un point de vente près de chez vous afin d'obtenir une estimation des frais.

[6] Votre Bénéficiaire peut retirer l'argent que vous lui avez transféré dans un point de vente Western Union de États-Unis .

[13] En règle générale, l'argent est disponible pour retrait dans un délai de 1 à 2 jours ouvrés après son arrivée sur le compte bancaire WU PAY.

[31] Le prix de chaque type de transfert d'argent dépend de nombreux facteurs, tels que la vitesse du transfert, la destination des fonds et d'autres. Veuillez sélectionner la méthode qui vous convient le mieux.