## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PHILIP GUARINO, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS,**<br><br>**PLAINTIFF,**<br><br>**v.**<br><br>**THE WESTERN UNION COMPANY,**<br><br>**DEFENDANT.** | Civ. No. 20-5793<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**[1]

 Philip Guarino, an individual living in France, purchased money orders in France from French agents or subsidiaries of The Western Union Company ("WU"). He made the purchases in person at offices maintained by the French subsidiaries inside French post offices. Mr. Guarino now claims that those agents or subsidiaries made misrepresentations in connection with the sale of the money orders. Primarily, he claims that the agents or subsidiaries did not disclose that WU earns a profit on money order purchases by charging a less favorable exchange rate than the one prevailing rate at the time of the transaction. WU now moves to dismiss on grounds of failure to state a claim and *forum non conveniens*.

 This French case is not properly brought in the District of New Jersey. I thus **GRANT** the motion to dismiss on grounds of *forum non conveniens*.

---

[1] Citations to certain items in the record will be abbreviated as follows.: "DE" = Docket entry number in this case.

Am. Compl. = Plaintiff's Complaint (DE 1)

## I.    BACKGROUND

### A. Facts

Philip Guarino has French and United States citizenship and has lived in France since 1997. (*See* DE 25-10 ¶ 4 (Verified Petition in support of the return of children filed by "Philippe" Guarino in the United States District Court for the District of New Jersey, Civ. No. 07-0076 (stating that Mr. Guarino and his family "moved to France" "in September 1997 and have lived together there ever since"));[2] *see also* Am. Compl. ¶ 4–5 & Ex. A (March 9, 2020 money order receipt stating that Mr. Guarino lives in Mougins, France).) From 2008 to 2020, Mr. Guarino sent a number of money orders from France to New Jersey and Canada. (Am. Compl. ¶ 4–5.)

To send money orders from France to New Jersey and Canada, Mr. Guarino would go in person to WU agencies which operated out of post offices in France. (*Id.* ¶ 30.) There, he would review and sign a "Recepisse D'Emission," (in English, a "transfer receipt"). (*Id.* ¶ 5 & Ex. A). One such transfer receipt is attached to the complaint. The transfer receipt, as one would expect, is in the French language. On its front page, the transfer receipt prominently sets out the foreign exchange rate of Euros to Canadian dollars, which applies to the money order (1 EUR = 1.355741 CAD"). (*Id.* ¶ 7; Ex A.). It also discloses a transfer fee which is charged to the purchaser. (*Id.*)

Just above the signature line on the front page, in small font, the document states "[j]e reconnais avoir pris connaissance et accepté les conditions générales de service Western Union figurant au recto et verso de ce document," which translates to "I acknowledge having read and accept the

---

[2] "In resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion." *Triola v. Afscme N.J. Council 63*, 2020 WL 7334314 at *2 (D.N.J. Dec. 11, 2020). Mr. Guarino's submission in the District of New Jersey in which he stated that he moved to France in 1997 and has lived there ever since is a public record, namely a "court file," on which I rely upon in evaluating this motion to dismiss.

general conditions of service of Western Union appearing on the front and back of this document." (*Id.* Ex. A; DE 25-4.) Mr. Guarino neglected to attach the back of the transfer receipt to his complaint, but WU has provided it as an attachment to its motion to dismiss.[3] (DE 25-3.) On the back, again in small font, the transfer receipt states, "Western Union calcule son taux de change sur la base des taux interbancaires disponibles sur le marché, augmenté d'une marge," which translates to "Western Union calculates its exchange rate on the basis of interbank rates available in the market, increased by a margin." (Am. Compl. Ex. A; DE 25-4 (with certified translation)) It further states, "Western Union et ses agents peuvent également réaliser des revenus sur les taux de change," which translates to "Western Union and its agents may also earn income on exchange rates." (Am. Compl. Ex. A; DE 25-4)[4]

It is unclear whether Mr. Guarino saw the back of the receipt before he made his purchase. He alleges in his complaint that the back of the receipt "is not even detached from other forms and given to the consumer independently of the other forms until after the form is signed and the transaction is completed . . . . The failure of WU to provide a copy of the signed form contract to consumers until after the transaction is completed violates the New Jersey Consumer Fraud Act . . . ." (Am. Compl. ¶ 8.) As WU points out, his claim can be interpreted to mean either that he was provided this page before the transaction and is simply complaining that it was not detached, or that he is claiming he never received the form until the transaction was completed. (DE 25 at 28–29.)

**B. Procedural History**

Mr. Guarino filed his complaint in the Superior Court of Morris County, New Jersey, and WU removed the case to this court on May 12, 2020. (DE 1.)

---

[3] Again, I consider this document because it is relied upon in the complaint. *Triola*, 2020 WL 7334314 at *2.

[4] Mr. Guarino, in addition to citing the small font, twice protests that the disclosures on the form "are in a foreign language!" (*i.e.,* French). (Am. Compl. ¶ 8 (punctuation in original)).

WU moved to dismiss. (DE 9.) In response, Mr. Guarino filed the Amended Complaint. (DE 23.) WU moved to dismiss again. (DE 25.) Mr. Guarino's complaint purports to bring claims on his own behalf and on behalf of all similarly situated individuals who purchased money orders from a WU agency in France. (Am. Compl. ¶ 21.)

Mr. Guarino brings a variety of claims connected both to representations made to him when he purchased the money orders in person and statements made on WU's website. Specifically, he claims that WU should have disclosed (1) that it adds a margin to the exchange rate when transferring money; (2) the amount of said margin; (3) that it is more expensive to pay for money orders using a debit card than paying with cash; (4) that the margin charged is greater when smaller sums of money are spent; (5) that cash sent through WU might not be immediately available to recipients; and (6) that WU's online platform for money transfers offers a lower margin than the in-person stores. (*Id.* ¶¶ 50–55.) He further claims that WU falsely represented (1) that the transfer fee was the only fee it charges; (2) that the foreign exchange rate set out on the transfer receipt was utilized, rather than the exchange rate plus a margin; (3) that the rate "may" differ when a money transfer is purchased in person as opposed to online, when it fact it "always" is different; and (4) that the money transferred is available in "minutes." (*Id.* ¶¶ 62–65.)

He brings these claims under New Jersey law as intentional and negligent fraud, under the New Jersey Consumer Fraud Act, and as breaches of the covenant of good faith and fair dealing, as well as under provisions of French law concerning misrepresentations and the covenant of good faith. (*See generally* Am. Compl.)

## II.   STANDARD OF REVIEW

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

5

In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

## III.  DISCUSSION

Western Union moves to dismiss under Rule 12(b)(6), citing the doctrine of *forum non conveniens* and failure to state a claim. I am convinced by WU's arguments regarding *forum non conveniens* and therefore dismiss on that basis, without reaching the merits.

"A federal district court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendants . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). The doctrine requires a decision "whether a case 'should be adjudicated elsewhere.'" *Meridian Consulting I Corp., Inc. v. Eurotec Can. Ltd.*, 2021 WL 689132 at *9 (D.N.J. Feb. 22, 2021) (quoting *Sinochem*, 549 U.S. at 432).

A district court employs a four-factor test to determine whether to dismiss on grounds of *forum non conveniens*. *Id.* The factors are:

6

(1) The amount of deference to be afforded to a plaintiff's choice of
forum;

(2) The availability of an adequate alternative forum where
defendants are amenable to process and plaintiffs' claims are
cognizable;

(3) Relevant private interest factors affecting the convenience of the
litigants; and

(4) Relevant public interest factors affecting the convenience of the
forum.

*Id.* at 14 (citing *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017). I
turn to those factors now.

### A. Deference Afforded to Mr. Guarino's Choice of Forum

While it is true that, under the doctrine of *forum non conveniens*, "a
plaintiff's choice of forum should rarely be disturbed," *Id.* (quoting *Kisano
Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)), different
classes of plaintiffs receive different levels of deference in the *forum non
conveniens* analysis. "[W]hen a domestic plaintiff sues in his or her home state,
that choice receives great deference, and will not be displaced unless the
remaining factors 'clearly favor[] an alternative forum.'" *Id.* at 34 (quoting
*Kisano*, 737 F.3d at 875). When, however, "the plaintiff's choice is not its home
forum . . . the presumption in the plaintiff's favor 'applies with less force,' for
the assumption that the chosen forum is appropriate is in such cases 'less
reasonable.'" *Sinochem*, 549 U.S. at 430.

Thus, "[w]hen the plaintiff is foreign . . . [his] choice deserve less
deference." *Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir.
2008). "[T]he reason for giving a foreign plaintiff's choice less deference is not
xenophobia, but merely a reluctance to assume that the choice is a convenient
one." *Lony v. E.I. Dupont de Nemours & Co.*, 886 F.3d 628, 634 (3d Cir. 1989).
The United States, after all, has powerful discovery and class action procedures
which are often more favorable than the procedures available to foreign

plaintiffs. Courts are thus "wary" when a plaintiff is a foreigner who chose the United States court system because of "the potential for foreign plaintiffs to seek jurisdiction in the United States because the law may be more favorable to their claims." *Kisano*, 737 F.3d at 873–74.

Nevertheless, my inquiry does not end at determining whether Mr. Guarino is a foreign plaintiff. "The central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Windt*, 529 F.3d at 190 (quoting *Piper*, 454 U.S. at 256). "Foreign plaintiffs," therefore, "may bolster the amount of deference due their choice by making a strong showing of convenience," so a "district court must assess . . . whether the considerable evidence of convenience has . . . overcome any reason to refrain from extending full deference to the foreign plaintiff's choice." *Id.* (quoting *Lony*, 886 F.3d at 634).

Because the touchstone for the *forum non conveniens* inquiry is convenience, a plaintiff may be "foreign" for the purposes of the analysis even though he maintains United States citizenship. Courts do not "assign 'talismanic significance to the citizenship or residence of the parties,'" but rather ask whether it is "reasonable to assume the choice of forum is based on convenience." *Kisano*, 737 F.3d at 875 (quoting *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003)). Thus, "the selection of a U.S. forum by a U.S. citizen living abroad [is] entitled to less deference than the choice of the same forum by a citizen residing in the forum because with respect to the expatriate U.S. citizen 'it would be less reasonable to assume the choice of forum is based on convenience.'" *Pollux*, 329 F.3d at 73 (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 n.5 (2d Cir. 2001)). Nevertheless, as discussed above, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to

8

gain dismissal for *forum non conveniens*." *Kisano*, 737 F.3d at 876 (quoting *Iragorri*, 274 F.3d at 72).

Thus, in *Church v. Glencore PLC*, the court considered a suit in this district by plaintiffs who claimed to be "located in the United States" against a company which was incorporated in the United Kingdom and headquartered in Switzerland, as well as numerous individual defendants who were foreign citizens. 2020 WL 4382280 at *2–3 (D.N.J. July 31, 2020). The court noted that (1) though the plaintiffs indicated they were located in the United States, they asserted no connection with New Jersey; (2) none of the defendants had any connection to New Jersey; and (3) the alleged conduct giving rise to the plaintiff's claims occurred in the Democratic Republic of Congo, Venezuela, and Nigeria. *Id.* at 3–4. The court thus concluded that the plaintiff's choice of forum would be afforded lesser deference. *Id.*

Similarly, in *Windt*, the Third Circuit considered a suit by Dutch trustees suing on behalf of an insolvent Dutch corporation against a number of defendants who were alleged to have committed fraud. 529 F.3d at 187. The defendants were a Delaware corporation with a principal place of business in Colorado, two New Jersey residents, and a Colorado resident. *Id.* The Third Circuit concluded that the district court properly assigned a low degree of deference to the plaintiff's choice of forum, reasoning that there was no indication that any of the alleged misconduct occurred in New Jersey, there did not appear to be any evidence located in New Jersey, the plaintiffs had no connection to New Jersey outside of the lawsuit, and none of the defendants bore any connection to New Jersey that had a relationship to the events at issue in the suit. *Id.* at 191. The court noted that while the suit had a connection with the United States generally, it was more interested in discerning any connection to New Jersey, noting that "the relationship between the local federal district court and the case" must be considered because "considerations of local inconvenience may be so strong as to [] dwarf considerations of national convenience." *Id.* at 191.

As mentioned above, Mr. Guarino is a citizen of both France and the United States, but he lives in France.[5] There is little reason to believe that litigating this case in New Jersey, as opposed to France, would represent a significant convenience. Furthermore, New Jersey bears no meaningful connection to this lawsuit; though some of the money orders Mr. Guarino purchased were sent to New Jersey, all of the operative conduct relevant to his misrepresentation claims occurred in France. (Of course, he was in France when he sent any money orders to New Jersey, and the particular money order attached to the Complaint was destined for Canada.) Similarly, Western Union has no meaningful relationship with New Jersey; it is a Delaware company with a principal place of business in Colorado. (DE 25 at 1) While it is alleged that Western Union "generally does business within the entire State of New Jersey" (Am. Compl. ¶ 2), it did not engage in any of the allegedly actionable conduct in this State, and does not appear to have made any relevant business decisions or maintained any files which might serve as evidence in this state.

Mr. Guarino counters with a number of contentions, including that:

(1) WU is a United States company;

(2) WU does not do business in France;

(3) Mr. Guarino is a United States citizen;

(4) He is an attorney licensed in New Jersey who practices and conducts business exclusively in New Jersey;

(5) the wire transfers at issue were almost all sent to New Jersey;

---

[5] Mr. Guarino asserts that he is "present in the United States where he conducts business." (DE 27 at 8.) This sentence is ambiguous as to whether he deems himself present in the United States because of the business he claims to operate here, or whether he means that he actually is physically present in this country and operates a business here. Mr. Guarino never, however, directly contradicts WU's assertion, supported by Mr. Guarino's own statements in previous court filings and his own complaint, that he has lived in France since 1997. (Am. Compl. Ex. A.) It is further confirmed by the fact that Mr. Guarino has continued to purchase money orders in France over the past few years, including in 2018, 2019, and 2020, indicating that he is currently living in that country. (Am. Compl. ¶¶ 4–5.)

(6) the wire transfers were paid for with a credit card issued by a United States financial institution;

(7) WU generated revenue in the United States as a result of the wire transfers;

(8) the wire transfers created obligations to fulfill customer contracts that WU performed in the United States;

(9) WU controls the wire transfer service and was the principal in the transactions;

(10) WU sets transaction prices from the United States.

(DE 27 at 4–5.)

These contentions are unpersuasive. Mr. Guarino's first contention has already been discussed; though WU is a United States company, it has little relationship to New Jersey. His second is belied by his own complaint, which alleges that WU is liable because its agents act on its behalf in France. His third contention provides little support for affording his choice of forum deference, because the mere possession of (dual) U.S. citizenship does not correspond to the relevant convenience factors. The fifth contention, that the wire transfers were sent to New Jersey, sets forth no more than a tangential connection to this state; as noted above, the allegedly conduct for which Mr. Guarino sues all took place in France, where the money orders were purchased. The issues in this case do not relate to the destination of the transfers, or even whether they were faithfully sent at all. This same reasoning applies to contentions seven through ten, which at any rate do not set forth any connection to New Jersey in particular.[6] The sixth contention is simply irrelevant.

---

[6] As the *Windt* court explained, though I consider connections between the suit and the United States as a whole, I am more concerned with connections to New Jersey in particular. Relatedly, a *forum non conveniens* does not rule out other districts in the United States as proper forums. 529 F.3d at 192 (granting *forum non conveniens* "does not necessarily mean that this action may not be maintainable in another federal district").

That leaves Mr. Guarino's fourth contention, which is that he is admitted to the New Jersey bar and practices law here. Those allegations, however, do not make a "strong showing" that this state is a more convenient forum for these claims. *Windt*, 529 F.3d at 190. First, the only reference in the amended complaint to his practice of law in New Jersey is in the first paragraph, where he states that he is an attorney at law in this state and is the sole principal of a firm located in Madison, New Jersey. (Am. Compl. ¶ 1.) The only source for Mr. Guarino's contention that he actually practices in this state is a certification attached to his opposition. (DE 27 at 4; DE 28)

Even if I did consider the claims made in Mr. Guarino's certification, I still would not find he has made a "strong showing" of convenience. He has provided no elaboration as to the extent of his legal practice here. Given that he lives in France and has done so for approximately 24 years, the bare assertion that he practices law in New Jersey is suspiciously imprecise; perhaps he simply maintains a license in this state, or perhaps he takes on a client every few years. It is possible, I suppose, that he maintains a regular, active practice here from across the Atlantic. It is simply impossible to tell.[7]

Nevertheless, the mere fact that Mr. Guarino practices law in this state or that he may maintain a law office in this state require that I give deference to his decision to bring his suit in light of the fact that no "activity related to the instant dispute" "occurred in New Jersey." *Chigurupati v. Daiichi Sankyo Co., Ltd.*, 2011 WL 3443955 at *5 (D.N.J. Aug. 8, 2011) (plaintiffs not entitled to deference despite the fact that they were United States citizens and owned a residence in New Jersey because they did not currently live there and the lawsuit had nothing to do with this state.) The allegations, in short, have

---

[7] Defendants attach a number of pieces of evidence to their certification in support of their motion to dismiss. For instance, the defendants note that the office address listed on Mr. Guarino's filing, 300 Main Street, Madison, NJ is actually the "address" of a virtual office service. (DE 25-9.) A Google Maps street view picture shows a strip mall with a variety of retail stores and no law firm offices. (DE 25-8.) For the reasons stated above, however, it matters little, and I do not rely on this evidence or consider whether judicial notice is appropriate.

nothing to do with Mr. Guarino's local legal practice, whatever it may consist of.

Mr. Guarino's own submissions disclose that he has not, in fact, brought this case in this district for reasons of convenience, but rather because he wishes to take advantage of American law that is "more favorable to [his] claims." *Kisano*, 737 F.3d at 873–74. He notes in his opposition that he opted to bring this claim in the United States rather than France "because the French legal system does not recognize or permit class action suits." (DE 27 at 6). A *forum non conveniens* dismissal is appropriate in precisely this sort of case: one which has little or nothing to do with New Jersey or the United States, filed in federal court simply to take advantage of the general discovery and class procedures afforded litigants in our system. *Lfoundry Rousset SAS v. AMTEL Corp.*, 2015 WL 4461617 at *4 (S.D.N.Y. July 21, 2015) (dismissing pursuant to *forum non conveniens* because the case presented "significant evidence of Plaintiffs' forum shopping" such as that the plaintiffs "admit[ed] that they brought suit in the United States to take advantage of the RICO statute and its treble damages provision, as well as the class action device").

Thus, I conclude that Mr. Guarino's choice of a New Jersey forum is entitled to limited deference.

## B. Adequate Alternative Forum

An alternative forum is adequate if (1) all defendants are amenable to process there, and (2) the claims are cognizable there. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *Wilmot v. Marriot Hurghada Mgmt, Inc.*, 712 Fed. Appx. 200, 203 (3d Cir. 2017). The second requirement is satisfied if the alternative forum "permit[s] litigation of the subject matter of the dispute" and "provide[s] a remedy" that is not "so 'clearly inadequate or unsatisfactory that it is no remedy at all.'" *Solari v. Goodyear Tire and Rubber Co.*, 654 Fed. Appx. 763, 766 (6th Cir. 2016); *see also Glencore PLC*, 2020 WL 4382270 at *4 (Switzerland adequate forum where it "permit[s] litigation on the subject matter of the dispute and offer[s] remedies for the wrong plaintiff allege[d]") (quoting *In*

re Optimal U.S. Litig., 837 F. Supp. 2d 244, 2552, 256–57 (S.D.N.Y. 2011)). WU has consented to suit in France and both parties agree that plaintiff's claims can be brought under French law, so this requirement is easily met. *See Glencore PLC*, 2020 WL 4382280 at *4 (defendant amenable to process where it has consented to jurisdiction before foreign court). Indeed, federal courts have consistently held that France is an adequate alternative forum for the type of tort claims Mr. Guarino brings here. *See, e.g., Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 161 (3d Cir. 2010); *Solari*, 654 Fed. Appx. at 767 (France is an adequate forum for claims brought initially as class actions).

Mr. Guarino argues that his claims are not cognizable in France for two reasons: (1) France does not recognize class action suits and (2) he will likely lose if the claim is brought in France because the allegations in his complaint do not make out a claim under French law. (DE 27 at 6–7.) Both of these arguments fail.

### 1. The Absence of a French Class Action Mechanism Does Not Render France an Inadequate Forum

Mr. Guarino asserts that France does not provide a mechanism for plaintiffs to bring class action claims. Assuming that this is true,[8] I do not find it shows that France is not an adequate forum. The vast majority of courts which have considered the question have determined that the absence of a class procedure in a foreign jurisdiction does not render that jurisdiction an inadequate forum. *See Solari*, 654 Fed. Appx. at 767 ("the absence of class actions does not render an otherwise adequate forum inadequate"); *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478 (2d Cir. 2002) ("the fact that a foreign forum

---

[8] WU does not contest this claim, though it appears that France has recently adopted new laws permitting consumer class actions. *See French Class Actions at a Glance and Their Prospects for Development*, Jones Day, (June 2019) https://www.jonesday.com/en/insights/2019/06/french-class-actions; *Class/Collective Actions in France: Overview*, Thomson Reuters Practical Law, https://uk.practicallaw.thomsonreuters.com/1-618-0240?transitionType=Default&contextData=(sc.Default)&firstPage=true.

'does not recognize class actions . . . is not so burdensome as to deprive the plaintiffs of an effective alternative forum'"); *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263, 273 (S.D.N.Y. 2010) ("It is well-established that 'the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate' . . . . [and] the availability of contingency fees, class actions, or federal-style discovery is not dispositive of the adequacy of an alternative forum.") (quoting *Blanco v. Banco Indus. de Venezuela*, 997 F.2d 974, 982 (2d Cir. 1993); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1335 (S.D. Fla. 2010); *Deirmenjian v. Deutsche Bank, A.G.*, 2006 WL 4749756 (C.D. Cal. Sept. 11, 2006); *In re Vioxx Prods. Liab. Litig.*, 448 F. Supp. 2d 741, 746 (E.D. La. 2006) (France is an adequate forum despite lacking Rule 23 class action mechanism).

Some older decisions have found that the absence of a class procedure in a foreign jurisdiction is a consideration which favors denying a *forum non conveniens* dismissal. *See Derensis v. Coopers & Lybrand Chtd. Accountants*, 930 F. Supp. 1003, 1007–09 (D.N.J. 1996) (Canadian forum insufficient because Canada lacks class action procedure); *In re Lernout & Hauspie Sec. Litig.*, 208 F. Supp. 2d 74, 91–92 (D. Mass. 2002)). Such decisions are hard to square with the Supreme Court's direction in *Piper* that the *forum non conveniens* is only inappropriate where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." 454 U.S. at 254. The *Piper* Court made clear that "an unfavorable change in law" cannot be a reason to deny *forum non conveniens* or else courts would be able to reject few foreign claims and "[t]he American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive," risking a "flow of litigation in the United States" and "further congest[ing] already crowded courts." *Id.* at 252. *Piper* also warned against requiring district courts to engage in the "complex exercise[ of] comparative law," noting that if courts were obligated to determine "what law would apply if the case were tried

in the chosen forum, and what law would apply if the case were tried in the alternative forum," and then "compare the rights, remedies, and procedures available under the law that would be applied in each forum," dismissal pursuant to *forum non conveniens* would become an inappropriately burdensome process, *id.* at 251—and a self-defeating one.

Denying a *forum non conveniens* motion because France lacks a class action mechanism would implicate all of the concerns raised in *Piper*. Most countries do not have as extensive a class action procedure as the United States does. If *forum non conveniens* were inappropriate on that ground, it could virtually never be granted in a case asserting putative class claims. Furthermore, determining precisely what rights Mr. Guarino would lose by being required to bring his claim in France is not an easy task: it is not clear precisely what France's class procedures are, to what extent they diverge from Fed. R. Civ. P. 23, and to what extent the absence of a class procedure in ta particular country might be ameliorated by other devices, such as a collective action. *See Vioxx*, 448 F. Supp. 2d at 746 (noting that France recognizes collective action claims).

Here, the parties do not dispute that France could provide a remedy for Mr. Guarino's claims, even if it might not permit him to aggregate similarly situated plaintiffs into a class in the same manner that he could in the United States. France is an adequate forum.

### 2. Failure to State a Claim Under French Law Does Not Render France an Inadequate Forum

Mr. Guarino also asserts that because he may have failed to state a claim under French law, he lacks an adequate forum in France. (DE 27 at 6–7.) This argument fails; what is guaranteed is not victory, but an adequate forum. I need only find that a foreign court "permits litigation of the subject matter of the dispute" and thus is "presently capable of *hearing* the merits of the plaintiff's claim." *Alcon*, 719 F. Supp. 2d at 273. As noted above, under *Piper*, 454 U.S. at 254, it is not relevant that the applicable law in France might be

16

less favorable; the question is whether France would hear the claim and, if it is meritorious, whether France would grant a remedy. Mr. Guarino does not dispute that France permits claims based on misrepresentations, non-disclosure, consumer fraud, and breach of the covenant of good faith and fair dealing, so a French court can hear his claims, even if it might ultimately reject them.[9]

### C. Private Interest Factors

The so-called "private interest factors" which a court must consider include:

> [1] Ease of access to sources of proof; [2] ability to compel witness attendance if necessary; [3] means to view relevant premises and objects; and [4] any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial.

*Kisano*, 737 F.3d at 873.

I find that these factors weigh in favor of dismissal. As for the ability to view the premises, it may be necessary to view the French post offices where Mr. Guarino purchased the money orders, since a substantial basis for Mr. Guarino's claim that the French agencies are WU agents is that they display a WU logo at their store. (*See* Am. Compl. ¶ 35.)

As for the ability to compel witnesses, any French witnesses would be located outside of this Court's 100-mile subpoena power under Federal Rule of Civil Procedure 45(c)(1). It will likely be necessary to call French witnesses at trial, since the parties dispute whether Mr. Guarino was handed the back of the receipt, which disclosed that WU charges a margin on its money orders, before or after he purchased the money order, and that issue may require testimony from the tellers at the WU agency. (Am. Compl. ¶ 8; DE 25 at 28–29.)

---

[9] In any event, though I do not reach the question, it is far from obvious that Mr. Guarino's claims would survive a motion to dismiss for failure to state a claim under United States law either.

It is not clear whether WU would have any authority to require employees at its overseas agencies to appear at a New Jersey trial. (DE 25 at 15–16.)

It is possible there would be witnesses in the United States, since the question of whether the transfer receipt was intentionally fraudulent may depend on the intent of whoever drafted the transfer receipt, and it is not clear who that is. (*See* DE 25 at 15 (denying every preparing or drafting money transfer receipts or disclosures).) French courts would not struggle to compel the attendance of WU employees in the United States, however, because WU has consented to French jurisdiction and has the authority to compel their attendance. (DE 25 at 10.)

Sources of proof almost certainly exist in France, and may exist in the United States. Of course, in the age of electronic discovery the physical location of physical documents is of little significance. *Meridian*, 2021 WL 689132 at *15.

Finally, the language barrier may pose obstacles to an easy, cost-effective trial in New Jersey. The key testimony and documents in this case are likely to be in the French language. If trial is held in New Jersey, documents will need to be translated, and any witness who appears at trial may need a translator.

"Under the private interest factors, dismissal is generally favored when a majority of the evidence and witnesses are located in a foreign forum and the alleged misconduct is centered there." *Glencore*, 2020 WL 4382280 at *5. That is the case here. Though the private factors are not overwhelmingly in Western Union's favor, they do weigh in favor of dismissal.

### D. Public Interest Factors

The so-called "public interest factors" include the following:

(1) the comparative administrative difficulties, (2) the law to be applied in the case, and (3) the forums' relative interests in trying the case.

*Meridian*, 2021 WL 689132 at *16 (citing *Kisano*, 737 F.3d at 873).

These factors weigh substantially in favor of dismissal. New Jersey has little or no interest in trying this case. The parties' dispute concerns whether disclosure made in France by a French agency to a French citizen were

18

misleading or insufficient.[10] All of the "core operative facts" of the case thus occurred in France. *See Lfoundry Roussett*, 2015 WL 4461617 at *4. While some of the money transfers were sent to New Jersey, many were sent elsewhere. There is no dispute that the money was faithfully delivered in this state and there are no allegations that WU failed to execute the transfers properly. Indeed, plaintiff himself groups his own transfers, irrespective of destination, alleging that they present the same issues—to say nothing of the class allegations.

Even if it is true that Western Union set the prices for the transfer in the United States, and even if that were relevant to the claims, there is no allegation that it performed such actions in New Jersey, as opposed to Delaware or Colorado, the states where it is incorporated and maintains its primary place of business. It is appropriate to dismiss a case where "there is no apparent connection to New Jersey," because it would be "unfair to burden [New Jersey] citizens with jury duty in this matter," especially "given that this district has one of the largest total number of filings recorded in the country." *Glencore*, 2020 WL 4382280 at *6.

Furthermore, it is possible that the choice-of-law analysis would result in application of French law to this matter. While I could conceivably apply French law, it is not my area of expertise, and foreign law would have to be pled and proven, generally by expert testimony. *See Meridian*, 2021 WL 689132 at *16 (fact that foreign law would apply weighs against dismissal). Furthermore, France utilizes a civil, rather than common law, system, which might make the application of French law more complicated than the application of, say, Canadian or United Kingdom law. *See id.* (noting that application of common law would be easier for a United States court).

---

[10] Mr. Guarino also alleges that Western Union's website contains misrepresentations, but never alleges that he ever visited the website prior to purchasing his money orders. *See Gutman v. Howard Sav. Bank*, 748 F. Supp. 264, 257 (D.N.J. 1990) ("A common law fraud claim in New York or New Jersey consists of the following elements: . . . (3) reliance by plaintiff on the misrepresentation.").

Finally, as alluded to above, the key testimony and documents in this case, including the transfer receipt itself, are in French. Translators are of course available, but evaluation of them would be far more direct, and less burdensome, for a juror (or jurist) who is a native speaker.

## IV.   CONCLUSION

Because plaintiff is entitled to little deference in his choice of forum, France is an adequate forum, the private factors weigh in favor of dismissal, and the public factors weigh substantially in favor of dismissal, I will dismiss Mr. Guarino's complaint without prejudice, on grounds of *forum non conveniens*.

Dated: August 2, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

20